SAM DELAMETTER, RESPONDENT, v. THE HOME INSURANCE COMPANY A CORPORATION, APPELLANT.—126 S. W. (2d) 262.

Kansas City Court of Appeals. January 30, 1939.

*Hogsett, Murray, Trippe, Depping & Houts* and *C. R. Westmoreland* for appellant.

*Rosenberg & Brenner* and *Joseph Koralchik* for respondent.

KEMP, J.—This is a suit on a fire insurance policy, to recover for damage to plaintiff's automobile truck trailer used in the transportation of freight, and described in the policy as a 1936 model Kentucky trailer, Serial No. 4222. The policy of insurance did not cover collision damage.

Plaintiff alleged in his petition "that on the 22d day of December, 1936, while said policy was in force and effect, the said Kentucky trailer was destroyed and damaged *by fire and through the effects of fire*" to the extent of $1000. The petition further alleged the vexatious refusal of defendant to pay said claim.

The defendant in its amended answer denied that the property described in the policy was destroyed and damaged by fire and through the effects of fire, and affirmatively alleged "that any loss and damage sustained to said property on December 22, 1936, was directly caused *by collision and not by fire.*"

Plaintiff filed a reply to defendant's amended answer, and, after denying the allegations of said amended answer, alleged that an employee of the plaintiff was operating and driving plaintiff's tractor with said trailer attached thereto, and that at a point near Lebo, Kansas, said driver discovered a fire at or near the floor boards of the tractor "and as a direct result of said fire at said point said tractor and trailer crashed into a bridge abutment at said time and place and was damaged thereby; that the damage to said trailer directly resulted from said fire and is covered under and by virtue of the terms of the policy of insurance mentioned in plaintiff's petition."

Plaintiff was engaged in the long-distance hauling of freight by trucks and trailers over various routes, including a route from Kansas City, Missouri, to Wichita, Kansas. Plaintiff owned and operated a Kentucky trailer which he purchased in May, 1936, and upon which he secured from defendant insurance company a policy insuring said trailer against loss by "fire arising from any cause whatsoever." As said before, *the policy did not cover insurance against loss or damage resulting from collision.*

On December 22, 1936, at about 2:00 o'clock A. M., W. C. Jenkins, an employee of plaintiff, was operating plaintiff's automobile tractor (which was uninsured) to which the insured trailer, loaded with

a cargo of freight, was attached, west bound on Highway 50-S, when at a point six miles east of Lebo, Kansas, the outfit crashed into the north abutment of a concrete bridge under the circumstances hereinafter set out. The highway where the loss occurred was of gravel or chat construction, running east and west, and was level for a distance of about one-quarter mile on each side of the concrete bridge where the loss occurred. It was a straight road with no curves for about a mile on each side of said bridge. There was another concrete bridge on said road which, according to plaintiff's own testimony, was about 450 feet east of the concrete bridge where the loss occurred. At the time of the loss both the tractor and trailer were in first class operating condition. Plaintiff's driver Jenkins had been making frequent trips with this or similar equipment over this Kansas City-Wichita route for a period of six weeks. The driver Jenkins (who was operating this equipment alone at the time in question) testified that the first indication of anything wrong was immediately after he passed the first or east bridge of the two concrete bridges above mentioned, at which time he saw a fire through the clutch and foot pedal slots of the floor boards of the tractor. He had not previously smelled anything burning, and his motor was operating normally. The driver Jenkins testified that on seeing the fire under the floor boards of the tractor at the east bridge (450 feet from the point where the collision occurred), his lights went out; that he immediately shifted his gears to neutral and pulled the lever to set the vacuum brake on the trailer and that then his motor died; that he did not apply either the foot brake or the emergency brake; that when he was about ten feet from the bridge he was sitting on the edge of the seat with his feet on the running board and one hand on the steering wheel and he "kind of jerked the wheel of the tractor and the banister of the bridge hit along about the door and I jerked the wheel of my tractor and that threw my trailer around off the side on the bank and the trailer wheels . . . hit the abutment on the bridge and that threw the body of it over to the right . . ." He testified that he became frightened at the situation:

"Q. Did you become frightened? A. I did.

"Q. Did you open the door anticipating to jump out of the cab? A. I did.

"Q. And why didn't you jump out of the cab? A. Well, the truck was going too fast at that time; it was going around thirty or thirty-five miles an hour."

He was then asked the question:

"Q. The only place you saw any fire previous to hitting the bridge was through the—not through any holes in the mat (a rubber covering over the floor boards) or any coming up around your feet or any place, or even the floor, excepting through the holes where your foot clutch and foot pedals are?"

To which he answered, "That is right."

With reference to his failure to apply the emergency brake, the driver was asked by plaintiff's counsel:

"Q. And would you have to put your hands in the fire if you applied your emergency brake? A. I would have had to bend over."

The trailer body was torn from the chassis by the force of the collision and was a total loss; the trailer chassis remained attached to the tractor but was bent and twisted and had to be repaired and straightened and was later sold for $350. No fire touched any part of the trailer (which was the only subject of insurance in the policy sued upon) until after the collision. During the burning of the tractor some fire came in contact with the front part of only the chassis of the trailer. The record does not disclose, however, that the fire that came in contact with the front portion of the chassis caused any damage in addition to the damage that had previously been done from the force of the collision.

From the foregoing, we have the situation of the plaintiff in this case undertaking to recover for loss and damage to the trailer hereinabove described under a policy insuring against the hazard of fire, but wherein no part of said trailer was consumed or damaged by fire.

Upon a trial of the case the jury found the issues for plaintiff and assessed his damages at $596.80, plus attorneys' fees in the amount of $165, or a total of $761.80. Following the action of the trial court in overruling defendant's motion for a new trial, defendant duly prosecuted this appeal.

Defendant submits eleven assignments of error. In the first of defendant's assignments, plaintiff's right to recover at all is challenged by the charge that the trial court committed error in overruling defendant's instruction "B," offered at the close of all the testimony, which instruction was in the nature of a demurrer to the evidence. It is defendant's contention that inasmuch as the subject matter of the insurance was limited to the trailer and that the policy *insured against loss and damage from fire and did not insure against loss and damage from collision, and* that since the entire damage to the trailer, as disclosed by the evidence, was collision damage, the plaintiff is not entitled to recover and that the judgment must be reversed outright.

Plaintiff, on the other hand, contends that the evidence shows that the fire the driver discovered some 450 feet from the point of loss directly caused the truck to collide with the abutment on the concrete bridge, with the resulting damage to the trailer, and that hence the fire is the proximate cause of the damage to the trailer. It is undoubtedly true that the proximate cause of loss by fire is not limited to losses wherein the subject matter of insurance is actually consumed by fire, but may also include losses from other sources or

agencies which have been set in motion as the direct result of an antecedent fire. Damage resulting from water or chemicals used in extinguishing a fire has been held to be the direct and proximate result of fire and within the contemplation of the parties to a fire insurance contract. [Cummings v. Pennsylvania Fire Ins. Co., 152 Iowa, 579, 134 N. W. 79.] Likewise, recovery has been allowed upon an insurance policy upon proof of theft of goods covered by the policy when such theft is incident to confusion attending the fire or to removal of the goods from the building because of fire therein. [Cummings v. Pennsylvania Fire Ins. Co., *supra*.] This rule has been recognized in this State as far back, at least, as 75 years. In the case of *Newark v. London & Liverpool Fire & Life Ins. Co.*, 30 Mo. 160, decided in 1860, the Supreme Court of Missouri held the following instruction to the jury to be a correct statement of the rule of law:

"If the jury believe from the evidence that only a portion of the goods mentioned in the plaintiff's petition was consumed by fire and damaged by water, but that the balance of said goods so alleged to be lost was, on account of the fire, *stolen from said store so as to be lost to the plaintiff, then the same is covered by the policy of insurance of the defendant read in evidence, and the jury ought so to find.*"

The court there held that "the precise time when the theft occurs is not important if it be occasioned directly by the fire."

In this State, as well as in numerous other jurisdictions in this country, loss resulting from explosion which in turn was directly caused by fire *within the insured premises* is held to be recoverable under a policy insuring only against the hazard of fire. [Exchange Bank of Novinger v. Iowa State Ins. Co., 218 Mo. App. 587, 265 S. W. 855; Renshaw v. Missouri State Fire & Marine Ins. Co., 103 Mo. 595, l. c. 606, et seq.; Renshaw v. Fireman's Ins. Co., 33 Mo. App. 394; Kattelmann v. Fire Assn., 79 Mo. App. 447; Northwestern Natl. Ins. Co. v. Mims, 226 S. W. 738 (Texas); Hall v. Insurance Co., 115 Tenn. 513, 92 S. W. 402; Wheeler v. Phenix Ins. Co., 203 N. Y. 283, 96 N. E. 452, 38 L. R. A. (N. S.) 474; Miller v. London & Lancashire Fire Ins. Co., 41 Ill. App. 395; Liverpool & London & Globe Ins. Co. v. Currie, 234 S. W. 232 (Texas); Phoenix Ins. Co. v. Adams, 127 S. W. 1008 (Kentucky); Metropolitan Casualty Ins. Co. v. Bergheim, 21 Colo. App. 527, 122 Pac. 812; Germania Fire Ins. Co. v. Roost, 55 Ohio St. 581, 45 N. E. 1097, 36 L R. A. 236.] It will be noted in all of the above cases that recovery is had for explosion loss under a fire policy only where the antecedent fire (or, as in two of the above cases, lightening) was within or on the premises insured. It would appear that at least the great weight of authority imposes this limitation upon the right of recovery under a fire policy for loss directly resulting from explosion. In case of Exchange Bank v. Insurance Co., *supra*, Judge BLAND, after observing the existence of the above rule in numerous states, made this further observation:

"However, so far as we have been able to discover, it has been universally held that such a policy does not make the insurer liable for losses occasioned merely by concussion from an explosion which occurs in another building although the explosion was caused by an antecedent fire."

In the case of Wheeler v. Phenix Ins. Co., 203 N. Y. 283, there was a suit on a policy of fire insurance in a grain elevator. There was a fire in the insured building, followed by an explosion therein. Defendant contended since this was strictly a fire policy there was no liability for the damage caused by explosion. The court, in ruling against the contention of the defendant insurance company, said:

"It has frequently been considered by the courts and text writers upon the subject, who have quite uniformly reached the conclusion that when a negligent or hostile fire exists within the insured premises and an explosion results therefrom under such circumstances as to constitute the fire the proximate cause of the loss and the explosion merely incidental, the company becomes liable upon its policy for the loss resulting therefrom."

The reason underlying this limitation upon recovery on a fire policy for loss directly resulting from some other force or element is discussed in the case of Miller v. London & Lancashire Fire Ins. Co., 41 Ill. App. 395, wherein the Court said:

"What is insisted, is that the explosion having been caused by fire, the destruction of the house by the explosion was damage by fire; in other words, that we are to attribute the injury not to the immediate cause, but to the cause of that cause.

"While it is true that where no conditions to the contrary are imposed, the insurer is liable for goods stolen during reasonable attempt to remove them from a burning building, or damage by water in a reasonable attempt to extinguish the fire, the rule that to hold the insurer the fire must be the proximate cause of the loss, remains. As was said by Byles, J., in Everett v. The London Assurance Co., 19 C. B. & N. S. 126, 'If that was not so, and a ship was in the neighborhood of Vesuvius and was shaken by an explosion, that would be damage by fire; or if a gun was fired off loaded with small shot, among crockery, that would be damage by fire.' Somewhere we must cease in this class of cases to look for the cause of causes, else we may run back 'To that primeval fire which wrapt the earth ere life began.' "

Likewise, in policies of fire insurance upon automobiles, it is generally held that in the case of a fire occurring in an automobile while in operation, which causes the driver thereof to leave the machine or to lose the control thereof and the machine thus to leave the highway and be wrecked, recovery may be had not only for the damage wrought by the fire, but also the damage resulting from collision. Thus, in the case of Tracy v. Palmetto Fire Ins. Co., 222 N. W. 447

(Iowa), the driver of an automobile heard some slight explosion and discovered flames at his feet. Becoming frightened, he lost control of his car and it went into a ditch. The car was insured against loss by fire alone. There was a verdict in favor of the plaintiff for not only the fire damage but also the breakage incident to the car running into the ditch. In denying defendant's contention that the right of recovery should be limited to the damage caused by fire only, the court said:

"Proximate loss includes not only losses which are directly caused by the fire itself, but, also, losses of which the fire is the efficient cause by setting in motion other agencies, 26 C. J., 341. . . .

"It is a matter of common knowledge that cars take fire while in use upon the public highway. Said fact, and the additional fact that the operator of the car on fire would instinctively act in much the same manner as did O'Reilly (the driver) . . . were certainly reasonably to be foreseen by the insurer. The jury could well find that the fire caused O'Reilly (the driver) to act as he did; that, independently of the fire, he would not have so acted. When discovering the fire, he had good reason to be frightened. His life was at stake. The jury was warranted in finding that the fire was the cause of the act which landed the car in the ditch, and the resulting damage."

Under closely analogous facts the court, in American Indemnity Co. v. Haley (Texas), 25 S. W. (2d) 911, sustained plaintiff's right to recover not only for the actual loss occasioned to the automobile by fire, but also the loss occasioned by its going into a ditch. The court there held that:

"In order to come within the provision of the policy, it was not required that the damage to the car was caused by actual consumption by fire. It was only required that fire was the proximate cause of the damage sustained by the car."

In all the cases cited in the briefs in this case or which we have discovered from independent research, in which recovery was allowed for all damages, including fire damage, there was a fire within the subject of the insurance which in turn caused the other-than-fire damage. Upon this factual distinction, defendant contends that fire was not the proximate cause of the collision damage complained of in plaintiff's petition and, hence, that recovery must be denied.

After most careful consideration of the entire situation presented in this case and the arguments *pro* and *con* upon this point, we are impelled to the conclusion that, fundamentally, it is not reasonable to say that fire *was* the proximate cause of the wreck of the automobile in the Tracy v. Palmetto case, *supra*, and to say that, as a matter of law, fire was *not* the proximate cause of the damage to the trailer in the instant case. In an opinion written by Justice CARDOZO,

in the case of Bird v. St. Paul Fire & Marine Ins. Co., 120 N. E. 86, l. c. 87, it was said:.

"The same cause producing the same effect may be proximate or remote as the contract of the parties seems to place it in light or shadow. That cause is to be held predominant which they would think of as predominant. A common-sense appraisement of every-day forms of speech and modes of thought must tell us when to stop. It is an act of 'judgment as upon a matter of fact.' [Leyland Shipping Co. v. Norwich Fire Ins. Co., *supra* (118 Law Times 120, 125).]

"This view of the problem of causation shows how impossible it is to set aside as immaterial the element of proximity in space. The law solves these problems pragmatically. There is no use in arguing that distance ought not to count, if life and experience tell us that it does. The question is not what men ought to think of as a cause. The question is what they do think of as a cause. We must put ourselves in the place of the average owner whose boat or building is damaged by the concussion of a distant explosion, let us say a mile away. Some glassware in his pantry is thrown down and broken. It would probably never occur to him that, within the meaning of his policy of insurance, he had suffered loss by fire. A philosopher or a lawyer might persuade him that he had, but he would not believe it until they told him. He would expect indemnity, of course, if fire reached the thing insured. *He would expect indemnity, very likely, if the fire was near at hand, if his boat or his building was within the danger zone of ordinary experience, if damage of some sort, whether from ignition or from the indirect consequences of fire, might fairly be said to be within the range of normal apprehension.*"

When the defendant issued its policy of insurance on this trailer it, of course, knew that the trailer was not equipped with any automotive power within itself and that it could be operated only when attached to an automobile tractor, and that the trailer when in operation must of necessity be a part of a single operating unit consisting of a tractor and the insured trailer. If, as has been held,. collision damage following an antecedent fire in an insured automobile, is within the contemplation of the parties to an insurance contract, how can it be reasonably contended that collision damage to a trailer occasioned by an antecedent fire in a tractor, which is the front part of an operating unit of which the trailer is, at the time at least, an integral part, is not likewise within the contemplation of the parties? The fire in each case creates the condition that wrought the collision damage. In view of the proximity of the trailer to the truck and their necessary interdependence in operation, and the fact that they constitute a single operating unit, we feel that a denial of recovery on the theory that the fire causing the collision did not ac-

tually occur within the trailer, would base such conclusion upon a highly artificial distinction. On the theory that fire was the proximate cause of the other-than-fire damage recovered in the automobile cases discussed herein, it is our conclusion that plaintiff in this case cannot be denied recovery for the collision damage to the trailer merely on the ground that the fire that allegedly caused the collision was in the tractor rather than in the trailer. We, therefore, rule this point against the defendant.

Defendant contends that plaintiff did not make a case to go to the jury for the further reason that the evidence discloses that fire was not the direct and proximate cause of the collision, but that following the appearance of fire the negligence of the plaintiff intervened, and that the natural sequence was broken by an independent cause, to-wit, the negligence of the driver of the truck. This contention necessitates an examination of the testimony pertaining to events leading up to the collision. Plaintiff himself testified that the distance between the two concrete bridges was approximately 450 feet. The driver of the truck testified that he observed the fire about the time he crossed the first of the two bridges, and that he flipped on the vacuum brakes of the trailer but that he did not apply either his foot brake or his emergency brake. He further testified that under the conditions there existing, and with the means at hand, that the trucking outfit could be stopped within a distance of 100 to 125 feet; that he observed the fire between the slots of the floor boards, but that the fire did not come up through the floor boards into the cab. He did testify, however, that he didn't apply the foot brake because of the fire, and that he didn't apply the emergency brake because he "would have to bend over." He testified that he was frightened because of the fire and the possible consequences of explosion in view of the presence of gasoline tanks in the equipment.

On behalf of the defendant, there was substantial evidence that the driver had gone to sleep and had run into the bridge abutment but, in determining the question raised, we must exclude this evidence and consider only the evidence most favorable to the plaintiff.

As was said in the case of Rider v. Syracuse Ry. Co., 171 N. Y. 139, l. c. 147:

"The proximate cause of an event must be held to be that which in a natural sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred."

Defendant vigorously contends that applying this rule to the facts in the instant case it was not (quoting from defendant's brief) "*natural* for the driver, after discovering fire under the floor boards of the tractor, to sit in the seat and hold the steering gear and continue driving down the road for 450 feet and never apply his brakes or try to stop," although the headlights were out and he could not see ahead for more than ten feet. "Was it *natural* that this truck and

load would run with motor dead, on a level gravel road at the rate of 40 miles per hour, for 450 feet, and then hit a bridge at 30 miles per hour, with such force that the impact tore off half the north abutment of concrete and steel, and disengaged the trailer body from its chassis and hurled it to the bed of the creek below, totally wrecking it beyond repair—the driver all the while sitting in the seat?"

Defendant then contends that under these facts it cannot reasonably be said that fire "in a natural sequence unbroken by any new cause produced the collision with the bridge." This argument might well be made to the jury. While it may be true that the story told by the driver strongly taxes credibility, we believe it is clearly a question for the jury to pass upon. We cannot say that this testimony is so in conflict with physical facts or with the common observation and experience as to hold it beyond belief. The jury apparently believed the plaintiff's statement that this situation created such fear in the mind of the driver that he was not in a mental condition to pursue the intelligent course of applying the brakes and stopping the truck. We cannot say, therefore, that the evidence was of such a character that a jury might not find (as by their verdict they did) that the fire, in an unbroken sequence following its discovery, was the direct cause of the collision.

Defendant by his second assignment of error challenges the correctness of instruction 1 given on behalf of plaintiff. It is charged that this instruction is erroneous in the following respects: (a) the instruction erroneously permitted a recovery for collision loss and damage as a result of fire in the tractor, which was not the subject of the insurance; (b) the instruction erroneously submitted to the jury the question of whether fire was the proximate cause of the loss and there was no evidence that the loss was caused by fire; (c) the instruction departed from and was not based on the pleaded cause of action; and (d) the instruction was erroneous in that it ignored and failed to include certain pleaded and proven defenses.

The first two objections set out in (a) and (b) above are ruled against defendant in what we have heretofore said in holding that the evidence makes a case for the jury.

The objection that the instruction departed from and was not based upon the pleaded cause of action is well taken. The petition alleged that "while said policy was in force and effect the said Kentucky trailer was destroyed and damaged by *fire and through the effects of a fire.*" This is the sole allegation in the petition as to the cause of the damage for which suit was brought. In the reply plaintiff alleged that "on the 22nd day of December, 1936, an employee of plaintiff was operating and driving plaintiff's tractor with the trailer mentioned in plaintiff's petition attached thereto at a point near Lebo, Kansas, and while driving and operating said tractor and trailer the said employee of plaintiff discovered a fire

at or near the floor boards of said tractor and as a direct result of said fire at said point said tractor and trailer crashed into a bridge abutment at said time and place and was damaged thereby; that the damage to said trailer directly resulted from said fire and is covered under and by virtue of the terms of the policy of insurance mentioned in plaintiff's petition." Plaintiff's instruction 1 is based upon and hypothesizes the facts set out in the reply. If these facts could be shown under the general allegations of the petition, then the allegations in the reply would not constitute a departure from the cause of action stated in the petition. The petition alleges that the trailer "was destroyed and damaged by fire and through the effects of a fire." The proof clearly disclosed that the trailer was not damaged "by fire and through the effects of a fire." The damage was solely collision damage and proof that fire caused the collision is not proof that the trailer was damaged "by fire and through the effects of a fire." With only the facts pleaded in the petition, the defendant could defeat plaintiff's cause of action as stated in the petition by proof that the damage was not caused "by fire and through the effects of a fire" but was exclusively damage from collision. Plaintiff's right of recovery is upon an entirely different theory and it is our view that the facts supporting that theory must be pleaded in order to permit recovery. It is well settled law that "plaintiff must recover, if at all, upon the cause of action stated in the petition and not upon one stated in the reply." Mathieson v. Railroad, 219 Mo. 542, l. c. 552, 118 S. W. 9.] Instruction 1 was erroneous because it permits the jury to find for the plaintiff upon the facts alleged in the reply and not upon the facts alleged in the petition.

The instruction is not subject to the objection that it failed to include the defenses of false and fraudulent misrepresentation of the assured after the loss, and the defense that the policy was void because of assured's failure to protect the property after discovering the peril. If an instruction covering the whole case and authorizing recovery by the plaintiff hypothesizes facts which, if found to be true, would of necessity negative the defenses on which proof is submitted by the defendant, this is sufficient. We think this instruction meets this requirement. In the notice and claim of loss submitted to the defendant, plaintiff stated that the tractor caught fire and by reason thereof the driver lost control and ran into a bridge. The representation so made by plaintiff to the defendant is hypothesized in plaintiff's instruction, and the jury is required to find that it is true as a condition precedent to plaintiff's right of recovery. The defense that this representation is fraudulent is therefore squarely submitted in the instruction. To find the facts hypothesized negatives the charge that the statements in the notice and claim of loss were false and fraudulent. Likewise, the charge that the driver

failed to protect and salvage the insured property after discovering the peril, by failing to apply his brakes and stop the truck, was in effect submitted to the jury in this instruction. It requires the jury to find that "the said employee of plaintiff discovered a fire at or near the floor boards of said tractor and *as a direct result of said fire* at said point . . . said tractor and trailer crashed into a bridge abutment at said time and place and was damaged thereby, etc." If the trailer crashed into the bridge abutment "as a direct result of said fire," then it did not crash into the bridge as a result of the driver's negligence in failing to stop the car or to put out the fire. And upon the jury finding that the driver is not negligent in failing to stop the car or put out the fire, then of course the policy is not voided by his failure to protect the insured property after discovering the peril. The rule in respect to the duty of the assured, as set out in 6 Couch on Insurance, paragraph 1492, at page 5350, is as follows:

"But, although it is the duty of the insured to use due care to extinguish a fire, this does not require him to expose himself to serious danger of personal injury or death."

It is our view that a finding of the hypothesized facts negatives the defenses referred to. We therefore rule the instruction is not subject to this objection.

Defendant's third, fourth and fifth assignments of error refer to the refusal of instruction No. 9, 10 and 11 offered on behalf of the defendant. Instruction No. 9 is as follows:

"Regardless of any other fact and circumstance in the case, if you find and believe from the evidence that the direct and proximate cause of the collision with the bridge was because the driver went to sleep, and that he negligently collided with said bridge, causing fire to said truck and trailer, then you are instructed that plaintiff cannot recover for collision damage."

The record discloses substantial evidence of the facts hypothesized in this instruction. This was an instruction covering a pleaded defense, and the record discloses substantial evidence in support thereof. The defendant unquestionably had the right to submit to the jury instructions covering its theory of the case. The refusal of this instruction was erroneous.

Instruction 10 offered by the defendant was properly refused by the trial court. The instruction is as follows:

"You are instructed that the policy sued on is a fire policy and said policy does not cover loss and damage which is the direct and proximate result of collision or upset, except actual fire damage.

"In the event you find the loss and damage to said trailer to be the direct and proximate result of a collision or upset, and not fire damage, then your verdict shall be for defendant.

"You are further instructed that said policy provides only for

fire loss and damage, and loss and damage sustained as the direct and proximate result of fire; if you find the collision and collision damage was not so caused, then plaintiff is only entitled to recover for actual fire damage and you must separate the collision damage from the fire damage, and in doing this you cannot speculate or guess, but you must arrive at the damage, if any, from the evidence in the case, if any.''

The first paragraph of the instruction under the peculiar facts in this case would undoubtedly be interpreted by a jury as a directed verdict in favor of the defendant. The jury could well reason that since there was no actual consumption of, or damage to, the trailer by fire, which is the undisputed fact, then from that fact alone plaintiff was not entitled to recover. Even if by diagram and strict definition this language could be said technically to correctly declare the law, it would nevertheless unquestionably convey an erroneous idea to the jury. The remaining portion of the instruction is generally subject to the same criticism. There was no error in the refusal of this instruction.

Defendant charges error in the refusal of its instruction 11, which is as follows:

''In the event you find there was a hostile fire in said tractor prior to said collision and you further find that said fire would not have caused said collision, without the negligence of the driver, if you so find, in failing to stop said truck, and failing to apply his brakes, if you so find, then you are instructed that said fire was not the direct and proximate cause of said collision and loss and damage and plaintiff cannot recover for collision damage.''

In defense of the action of the trial court in refusing this instruction, plaintiff contends ''that it is no defense to a suit on a fire policy that the assured or his servant negligently caused the fire or negligently acted in conjunction with other operative causes to cause it'' (the fire). From this contention, it is clear that plaintiff has misconceived the effect and purpose of this instruction. It is unquestionably true that under the terms of the fire insurance policy, negligence going to the *cause* of the fire constitutes no defense. The policy insures against damage by fire from any cause other, of course, than fire brought about by fraud or design on the part of the insured. Defendant makes no contrary contention. Nor does the instruction submit negligence as to the cause of the fire in the tractor as a defense in the case. As we have heretofore pointed out, the damage to the trailer was the *immediate* result of collision and not of fire. Plaintiff's right of recovery must be based solely upon the theory that the fire caused the collision and thus was the proximate cause of the damage within the meaning of the policy. This instruction undertakes to submit one of defendant's theories of defense, to-wit, *that it was the negligence of the driver rather than the fire*

*in the tractor that caused the collision.* The evidence clearly warranted such a submission. If, indeed, the fire in the tractor was of such character that it would not interfere with the operation of the vehicle and the prevention of the collision with the bridge balustrade, then the collision was not caused by fire but by the negligence of the driver. While defendant was entitled to submit this theory of defense by proper instruction, we cannot approve the instruction offered for the reason that it does not fairly and clearly submit to the jury the question as to whether or not the negligence of the driver, rather than the fire, was the direct cause of the collision. It is not a question of whether the two things operating in conjunction brought about the collision, but whether negligence caused the collision or whether fire caused the collision. The trial court cannot, therefore, be convicted of the error for the refusal of this instruction.

Defendant contends that the court erred in giving plaintiff's instruction No. 2 and refusing defendant's instruction No. 6, (assignments of error 6, 7 and 8). Plaintiff's instruction No. 2 submitted to the jury the question of vexatious refusal to pay the alleged fire loss and authorized recovery, in addition to the amount of the loss, of a sum not exceeding ten per cent of the amount due under the policy and attorneys' fees. Defendant's instruction No. 6 undertook to withdraw this question from the consideration of the jury. From a careful reading of the record, we are convinced that the evidence did not justify the submission of the question of vexatious refusal to pay. There was evidence that, within approximately a half hour after the loss occurred, the driver of the truck told a farmer living nearby that he went to sleep and "just before he hit the bridge the truck got out into this row of chat that they have along the road and when it struck that the truck swayed and kind of woke him up and he seen this bridge" and (from statement taken from witness by the defendant) that the driver then pulled suddenly to the left to avoid hitting the north rail, but the right side of the cab hit the rail and the truck turned over on its right side, smashing the gasoline tank and causing the fire. Furthermore, the claim was made on the basis of a fire loss and it was undisputed that no fire touched the subject of insurance until after the crash occurred, and that there never was any real damage to any portion of the trailer as the direct result of the fire. No case has been cited in either the brief of plaintiff or defendant (and, therefore, it may be assumed that there are none), in which the exact situation presented here, has been submitted to a court for determination. Furthermore, the only cases in which recovery for collision damage has been allowed under a fire policy on a vehicle are those cases in which there was an antecedent fire within the subject matter of the insurance, while in the instant case no fire came in contact with the subject matter insured prior to the damage effected by the collision, but was confined

to the portion of the operating unit which was uninsured. The claim submitted by the plaintiff to the defendant presented a novel question and, so far as we have been able to discover, presents here a question of first impression.

The clear meaning of our statute permitting recovery against an insurance company on account of vexatious refusal to pay a loss is that "when an insurance company has, without reasonable or probable cause or excuse, obstructed a beneficiary by refusing to pay a loss under its policy, he may be allowed in a suit thereon the penalties prescribed by the statute." [State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 1. c. 1095, and Block v. U. S. Fidelity & Guaranty Co., 316 Mo. 278, 1. c. 305.] In the case of State ex rel. Insurance Co. v. Trimble, 18 S. W. (2d) 21, 22, it has likewise been held that the penalty provided by the statute should not be inflicted unless the evidence and circumstances show that such refusal was wilful and without reasonable cause as the facts would appear to a reasonable and prudent man before the determination of the question by trial. The mere fact that a jury finds the issues against the insurance company on the claim for loss is not determinative of this question. If, under all the circumstances, it is clear that an insurance company is acting in good faith in its refusal to pay the claim for loss under an insurance policy, it unquestionably has the right to have the issue passed upon by a court and jury without the imposition of the penalty provided in said statute. There is no fact or circumstance disclosed by the record in this case warranting the submission to the jury of the question of vexatious refusal to pay.

Error is charged in admitting the evidence of plaintiff Delametter and his driver Jenkins that the generator in the tractor had caused trouble previous to the loss in question, on the ground that such evidence was immaterial. The evidence complained of was submitted, apparently, to afford an explanation of the fire that appeared beneath the floor boards of the tractor. It is not quite clear from this evidence that the trouble related about the generator could have been responsible for the fire. A showing that this "trouble with the generator" could have explained the fire, is the only basis on which this evidence could be said to be material. Much of this testimony, however, went in without any objection, and such objection as was made to this particular line of testimony was not of sufficient particularity to predicate error upon the adverse ruling by the court. Furthermore, counsel for defendant upon cross-examination of the driver interrogated him as to matters of closely kindred character, inquiring, for instance, as to whether or not he had ever had any trouble with respect to the wiring on the truck. An examination of the record in respect to this point fails to disclose error prejudicial to the defendant.

For the errors herein noted, the judgment is reversed and the cause remanded. All concur.