# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW 05-127

WANDA LAFLEUR, INDIVIDUALLY, ET AL.

VERSUS

AFTCO ENTERPRISES, INC., ET AL.

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 2004-0523-C,
HONORABLE J. BYRON HEBERT, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Glenn B. Gremillion, Judges.

**WRIT DENIED IN PART AND GRANTED
IN PART; JUDGMENT RENDERED.**

Howard L. Murphy
Deutsch, Kerrigan & Stiles, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130
(504) 581-5141
Counsel for Defendant/Respondent:
    Acceptance Indemnity Insurance Company

John P. Guillory
The Dill Firm, A.P.L.C.
Post Office Box 3324
Lafayette, Louisiana 70502-3324
(337) 261-1408
Counsel for Defendants/Applicants:
    Harco National Insurance Company
    Southern County Mutual Insurance Company

**James D. Hollier**
**Laborde & Neuner**
**Post Office Drawer 52828**
**Lafayette, Louisiana  70505-2828**
**(337) 237-7000**
**Counsel for Defendants/Respondents:**
>**Norman Roberts**
>**Francisco Gonzales**
>**V.C. Enterprises, L.L.C.**

**Hal. J. Broussard**
**Ped C. Kay, III**
**Broussard & Kay**
**Post Office Drawer 3308**
**Lafayette, Louisiana  70502**
**(337) 232-1666**
**Counsel for Plaintiffs/Respondents:**
>**Richard J. Lafleur, Jr.**
>**Tina T. Lafleur**
>**Sarah R. LaFleur**
>**Wanda LaFleur**

**Michael J. Remondet, Jr.**
**Scott F. Higgins**
**Jeansonne & Remondet**
**Post Office Box 91530**
**Lafayette, Louisiana  70509**
**(337) 237-4370**
**Counsel for Defendants/Respondents:**
>**Aftco Enterprises, Inc.**
>**Etsi, Inc.**
>**Home State County Mutual Ins. Co.**

SULLIVAN, Judge.

This lawsuit arises from a multi-vehicle accident that occurred on April 24, 2003, when a tractor/trailer rig failed to stop for a red light on U.S. Highway 90 East in Lafayette Parish. Plaintiffs and three insurers filed motions for summary judgment regarding insurance coverage and the ranking of insurance policies. The trial court's rulings on the motions for summary judgment are the subject of this writ application. For the following reasons, we deny the writ application as it pertains to coverage under one policy, and we grant the writ application as it pertains to coverage under another policy.

### *Facts*

Norman Roberts was driving a tractor/trailer rig when he failed to stop for a red light on Highway 90 and plowed into the thirteen or fourteen vehicles that had stopped ahead of him for the light. Richard Lafleur was the driver of a vehicle stopped for the red light. He died in the accident. Mr. Lafleur's wife and children filed this suit.

Plaintiffs and Acceptance Indemnity Insurance Company (AIIC) filed motions for summary judgment which were granted by the trial court. Motions for summary judgment filed by Southern County Insurance Company (Southern County) and Harco Insurance Company (Harco) were denied by the trial court. Southern County and Harco sought writs, asserting that the trial court's rulings on all of the motions for summary judgment were erroneous.

### *Summary Judgment*

Appellate courts review motions for summary judgments *de novo*, asking the same questions the trial court asks to determine whether summary judgment is appropriate. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. This

inquiry seeks to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of a legal dispute." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751 (quoting *S. La. Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writ denied*, 596 So.2d 211 (La.1992) (alteration in original)).

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

The mover bears the initial burden of proof to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but he must point out that there is an absence of factual support for one or more elements essential to the claim. La.Code Civ.P. art. 966(C)(2). Once the mover has met his initial burden of proof, the burden shifts to the nonmoving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. *Id*.

"Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment." *Robinson v. Heard*, 01-1697, p. 4 (La. 2/26/02), 809 So.2d 943, 945.

2

### *Discussion*

Insurance policies are contracts between the parties and have the effect of law between them. *Bryant v. United Servs. Auto. Ass'n*, 03-3491, 04-28 (La. 9/9/04), 881 So.2d 1214. "The intention of the parties is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the agreement and by giving consideration on a practical basis to the instrument in its entirety." *Fleniken v. Entergy Corp.,* 99-3023, 99-3024, p. 6 (La.App. 1 Cir. 2/16/01), 790 So.2d 64, 68, *writs denied*, 01-1269, 01-1295 (La. 6/15/01), 793 So.2d 1250, 1252. "When the language of an insurance policy is clear and unambiguous, a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given." *Robinson,* 809 So.2d at 945 (citing *Sanchez v. Callegan*, 99-137 (La.App. 1 Cir. 2/18/00), 753 So.2d 403). Further, when the words of a contract are clear, explicit, and lead to no absurd consequences, the contract must be interpreted within its four corners and cannot be explained or contradicted by parol evidence. La.Civ.Code art. 1848; *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So.2d 1024.

Insurance companies have the right to limit coverage in any manner they desire, but the limitations cannot conflict with statutory provisions or public policy. *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180. "Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured." *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So.2d 975, 976 (La.1991). This rule of strict construction does not allow courts to pervert policy language or be inventive and create an ambiguity where none exists. *Muse v. Metro. Life Ins. Co.*, 193 La. 605, 192 So. 72 (1939).

In an effort to clarify our discussion of the issues presented herein, the following outline of ownership, contractual relationships, and insurance coverage at issue has been prepared:

| | Tractor | | Trailer |
|---|---|---|---|
| **Owner:** | V.C. Enterprises, Inc./ Francisco Gonzales | **Owner:** | Performance Rental, L.C. |
| **Leased to:** | ETSI, Inc. | **Leased to:** | AFTCO Enterprises, Inc. |
| **Driver:** | Norman Roberts | | |
| **Insurers:** | Home State–$1 million | **Insurers:** | Southern County– $1 million |
| | AIIC–$1 million | | Harco–$10 million |

AFTCO contracted with its sister company, ETSI, to haul the Performance Rental trailer. ETSI leased the tractor from V.C. Enterprises, Inc./Francisco Gonzales and hired Roberts to drive it. Home State and AIIC issued policies of insurance to AFTCO, as the named insured; ETSI was named an additional insured by an endorsement. Performance Rental is a named insured of policies issued by Southern County and Harco.

## Coverage under Southern County's Policy

Southern County issued a policy of business auto insurance to Cleveland Mack Sales, Inc. Performance Rental, L.C. is a named insured of the policy, and the trailer involved in this accident is listed as a "covered auto" in the policy. The tractor driven by Roberts is not identified as a "covered auto," and neither AFTCO/ETSI nor Roberts are named insureds under Southern County's policy. Plaintiffs assert that Southern County's policy of insurance on the trailer owned by Performance Rental provides coverage to them for this accident; Southern County contends there is no coverage under its policy for this accident.

4

Southern County's policy provides liability coverage as follows:

> We will pay all sums an **insured** legally must pay as damages because of **bodily injury** or **property damages** to which this insurance applies, caused by an **accident** and resulting from the ownership; maintenance or use of a covered **auto.**

The policy defines **insureds** in pertinent part as "[a]nyone else while using with your permission a covered **auto** you own, hire or borrow" and "[a]nyone liable for the conduct of an **insured** described above but only to the extent of that liability."

Plaintiffs assert AFTCO/ETSI and Roberts were insureds under these provisions because Performance Rental's trailer was a "covered auto" insured by Southern County's policy. The policy defines "covered autos" in pertinent part as:

> SPECIFICALLY DESCRIBED **AUTOS**. Only those **autos** described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any **trailers** you don't own while attached to any power unit described in ITEM THREE).

"**Auto**" is defined in Southern County's policy as "a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include **mobile equipment.**"

Plaintiffs and AIIC first argue that, when the trailer, a "specifically described auto," was coupled with the tractor, the two became one vehicle, a "specifically described auto"; therefore, Roberts was an insured under the policy and the policy provides primary coverage for this accident. Countering, Southern County asserts that an accident must result from the "use" of the trailer for there to be coverage under its policy. It argues that Roberts' driving of the tractor caused the accident, not his "use" of the trailer; therefore, there is no coverage under this provision.

In *Aetna Casualty & Surety Co. v. Hertz Corp.*, 366 So.2d 1362 (La.1978), the supreme court held that a tractor and the trailer it was hauling became one vehicle for

5

the transportation of the cargo. This holding is premised on the decision in *Mays v. Aetna Casualty & Surety Co.*, 242 So.2d 264 (La.App. 2 Cir. 1970). In *Mays*, the court was faced with the opposite of Southern County's argument, i.e., the tractor was not in use because it was stationary while the trailer it was hauling was being loaded. The court dismissed the argument, explaining:

> [The tractor insurer] contends that [the driver] did not use the truck-tractor, because it was stationary and was not being loaded; that only the trailer was being loaded; that the truck-tractor, possessing only a cab and a fifth wheel, was not capable of being loaded.
>
> Common sense interpretation of the situation resists such an argument. The truck-tractor and the semitrailer become one vehicle for transporting things like the caterpillar tractor. *See Johnson Transfer & Freight Lines, Inc. v. American National Fire Insurance Company*, 168 Tenn. 514, 79 S.W.2d 587, 99 A.L.R. 277; *Delametter v. Home Insurance Company*, 233 Mo.App. 645, 126 S.W.2d 262.
>
> The truck-tractor insured by Tri-State is designed to haul cargo. It has no efficient or economic utility otherwise. In order to haul cargo, it is designed to pull a trailer which in turn contains the cargo. This is the very use for which the vehicle is made. Although it was at rest, it supported the trailer on which the caterpillar machine was being loaded. To load the trailer is to load the truck-tractor.

*Id.* at 266-67. *See also Pitre v. Elliott*, 541 So.2d 989 (La.App. 3 Cir. 1989).

*Delametter v. Home Ins. Co.,* 233 Mo.App. 645, 126 S.W.2d 262 (1939), is analogous to the situation here. In *Delametter*, the trailer insurer argued that its policy did not provide coverage because the tractor pulling the trailer, not the trailer, caught on fire. The court rejected the insurer's argument, explaining:

> When the defendant issued its policy of insurance on this trailer it, of course, knew that the trailer was not equipped with any automotive power within itself and that it could be operated only when attached to an automobile tractor, and that the trailer when in operation must of necessity be a part of a single operating unit consisting of a tractor and the insured trailer.

*Id.* at 659, 126 S.W.2d at 268.

6

The court's reasoning in *Fruehauf Trailer Co. v. South Carolina Electric & Gas Co.*, 223 S.C. 320, 75 S.E. 2d 688, (S.C. 1953), pointedly reveals the fallacy of Southern County's argument that the trailer did not cause or contribute to this accident. In *Fruehauf*, the issue was whether a trailer drawn by a tractor was subject to attachment for damages which resulted from an accident involving the tractor/trailer. The plaintiff had a contract to buy the trailer; he sought to resist the attachment of the trailer to satisfy the damages resulting from the accident, arguing it was not a vehicle within the meaning of the attachment statute. The court ordered the attachment, explaining:

> The trailer and the truck-tractor form one unit. *They are both part of one operation out of which the damages arose.* The truck-tractor is by the nature of its construction designed to operate with the trailer, and likewise the trailer to operate with the tractor. *The trailer, because of the additional weight and momentum given to the unit, has a definite bearing on the operation of the truck tractor. These considerations are but common experience.*

*Id.* at 323, 75 S.E. 2d at 689 (emphasis added). Pursuant to this jurisprudence, we find that Performance Rental's trailer and the tractor were one vehicle and that Roberts is an insured under Southern County's policy.

Southern County argues this finding is misplaced because the defendant-drivers in *Mays* and *Hertz* were named insureds or employees of named insureds and unquestionably insureds under the policies in question. It urges that because insured status was not an issue in those cases, they are not applicable to the determination herein. Based on our consideration of the discussions presented in the cited cases, especially, *Fruehauf*, we find this argument is without merit.

Southern County cites *Carter v. Vangilder*, 803 F.2d 189 (5th Cir. 1986), in support of its proposition that *Mays* and *Hertz* should not be applied to this case. In

7

*Carter*, the issue was whether the policy insuring the trailer involved in the accident sued on was primary and payable pro-rata with the insurance on the tractor or excess to the insurance on the tractor. Louisiana Farm Bureau argued that "once the tractor and trailer were joined, the separate policies on each unit became one, and, therefore, the liability must be shared on a pro rata basis." *Id*. at 192. The clause at issue read: "when the covered auto is a trailer which is connected to a power unit, this policy's liability coverage . . . (b) Is excess if the power unit is not a covered auto." *Id.* at 193. The issue was not whether the policy provided coverage but whether the coverage was primary or excess. *Carter* is not analogous to the issue presented here, and any language employed by the court in its decision is not pertinent to a decision on the facts presented here. We find no error with the trial court's determination that the tractor and trailer were one vehicle and that Roberts was an insured under Southern County's policy.

The trial court also found coverage under the "Nonowned Autos Only" provision which provides:

> NONOWNED **AUTOS** ONLY. Only those **autos** you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes **autos** owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

Plaintiffs and AIIC contend that the tractor is a "covered auto" under this provision because it was not owned, leased, hired, rented, or borrowed by Performance Rental and it was used in connection with Performance Rental's business of leasing trailers. Southern County argues that, because Roberts was not in the course and scope of employment with Performance Rental and Performance Rental did not have anything to do with the trailer at the time of the accident,

8

Roberts' driving the tractor/trailer did not constitute "use[] in connection with" Performance Rental's business.

We must determine whether the trailer was being used in AFTCO/ETSI's business *and* Performance Rental's business at the time of the accident. AFTCO rented the trailer from Performance Rental. Performance Rental's involvement with the trailer was leasing it to AFTCO, which was completed before the accident occurred. There is no evidence Performance Rental was involved in contracting to deliver cargo or delivering cargo in any way.

Plaintiffs argue the nature of the business of transporting goods requires a finding that the trailer was being used in both AFTCO and Performance Rental's businesses. They contend federal regulations of the trucking industry mandate such a finding and cite federal regulations which mandate that authorized motor carriers maintain liability insurance in the minimum amount of $750,000.00 on tractors and trailers. Federal regulations do impose a liability insurance requirement of $750,000.00; however, this requirement is imposed on the lessee/authorized motor carrier, not the owner/lessor of the leased equipment. 49 U.S.C. § 13906.

Federal regulations also require a written lease agreement between the equipment owner/lessor and the lessee/authorized motor carrier, which:

> [S]hall clearly specify the *legal obligation of the authorized carrier to maintain insurance coverage* for the protection of the public pursuant to [Federal Motor Carrier Safety Act] regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

49 C.F.R. § 376.12(j)(1) (emphasis added). Plaintiffs have not cited any federal law or regulation which requires both the owner/lessor and the lessee/authorized motor

9

carrier to carry liability insurance which provides coverage for an accident which occurs when the truck or trailer is leased, in the possession of the lessee/authorized motor carrier, and being operated by the lessee/authorized motor carrier.

Louisiana jurisprudence has "interpreted the nonowned autos provision as requiring that the accident occur while the nonowned auto is being used in the course and scope of the insured's business or personal affairs." *Perkins v. Guar. Nat'l Ins. Co.*, 95-229, p. 6 (La.App. 3 Cir. 11/2/95), 667 So.2d 559, 563, *writ denied*, 96-759 (La. 5/31/96), 673 So.2d 1033. *See also Adams v. Thomason*, 32,728 (La.App. 2 Cir. 3/1/00), 753 So.2d 416, *writ denied*, 00-1221 (La. 6/16/00), 764 So.2d 965. In *Adams*, the court found that a cotton trailer owned by a gin company was not being used in the gin company's business when one of its officer's employees was involved in an accident while hauling the officer's cotton to the gin. Plaintiffs argued the trailer was being used in the gin company's business. The court rejected the argument, observing that the driver of the truck hauling the trailer was not an employee of the gin company, but of the officer, who was also a cotton farmer, and that the officer/farmer was vicariously liable for the driver's actions, not the gin company.

As in *Adams*, Roberts was not an employee of the insured, Performance Rental, but ETSI. He was not performing services for Performance Rental, but for AFTCO/ETSI at the time of the accident. The tractor/trailer was being used in AFTCO's business at the time of the accident, not Performance Rental's business. Therefore, there is no coverage for the tractor under the "nonowned autos only" provision of Southern County's policy.

10

For these reasons, we find no error with the trial court's judgment in favor of Plaintiffs that Southern County's policy of insurance provides coverage for this accident pursuant to its "specifically described auto" and permissive user provisions. However, we do find error with the trial court's denial of summary judgment in favor of Southern County under the "nonowned auto" provision, and we grant judgment in favor of Southern County that the tractor is not insured under the "nonowned auto" provision of its policy.

### *Leasing or Rental Concerns-Contingent Coverage*

At the hearing on these motions for summary judgment, counsel for Southern County admitted coverage under the policy, stating "I insure anyone who uses the trailer with Performance Rental's permission." However, in its cross-motion for summary judgment, Southern County contends its policy does not provide *primary* coverage for this accident. It argues that the Leasing or Rental Concerns-Contingent Coverage Endorsement to its policy requires the lessee, AFTCO/ETSI, to provide primary insurance coverage to Performance Rental, and that, pursuant to the terms of the endorsement, its policy does not provide primary coverage for this accident. Plaintiffs argue the endorsement is inapplicable.

AIIC seeks a judgment declaring that the coverage provided by its policy for this accident is *excess* to the coverage provided by Home State on the tractor and by Southern County on the trailer. It asserts that its policy is an umbrella policy that pays on behalf of ETSI, lessee of the tractor, only if the ultimate net loss for the accident is greater than the sum of coverage from all collectible primary insurance, i.e., Home State and Southern County's policies.

11

The trial court held that Southern County's policy was primary on the trailer and that AIIC's policy was excess to Southern County's policy. Southern County urges that the trial court's ranking of these two policies is wrong and that any coverage its policy provides for this accident is excess to Home State's primary coverage and AIIC's umbrella coverage on the tractor. It also argues that it did not contemplate liability for damages caused solely by the fault of tractor drivers who have no relationship with its insured, Performance Rental, when it issued the policy.

The "Leasing or Rental Concerns-Contingent Coverage" endorsement of Southern County's policy provides, in pertinent part:

> This endorsement applies when the "lease or rental agreement" in effect at the time of an "accident" *specifies* that the lessee or rentee is responsible for providing *primary* liability insurance or primary physical damage.

(Emphasis added). The endorsement further provides that Southern County's obligation is contingent upon liability insurance "required in the 'lease or rental agreement'" not being "collectible" and that its coverage is "excess over any other collectible insurance."

Plaintiffs and AIIC argue this endorsement does not apply because the rental agreement between Performance Rental and AFTCO does not "specify" that AFTCO must provide "primary liability insurance." Southern County does not deny this but argues that the lease agreement evidences its and Performance Rental's intent for AFTCO/ETSI to provide primary insurance and for this endorsement to apply in situations like this one. It points to Performance Rental's lease agreement which requires AFTCO to maintain liability insurance in the amount of $1 million with Performance Rental being named an additional insured and to indemnify and hold Performance Rental harmless "against all loss or liability (including reasonable

12

attorney's fees) for injuries or damages to persons or property resulting from use of trailers rented from Performance [Rental]."

The trial court strictly construed the endorsement because it limits coverage; it granted AIIC's motion and denied Southern County's motion. Southern County urges that the trial court's strict construction of the endorsement was improper, arguing that strict construction inures only to the benefit of the insured, Performance Rental. Southern County's argument fails in the face of Article 2046 of the Civil Code, which provides: "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." The "Leasing or Rental Concerns-Contingent Coverage" endorsement is clear and explicit. It is applicable **if** Performance Rental's lease agreement **"specifies"** that AFTCO is responsible for providing primary liability insurance. The lease does not specify this requirement; therefore, the endorsement is not applicable, and "no further interpretation can be made in search of the parties' intent."

Southern County urges that this court's decision in *Pitre,* 541 So.2d 989, requires a different conclusion: that it and AIIC pay on a pro-rata basis. In *Pitre*, the two policies at issue each contained an excess coverage provision which was mutually repugnant to the other policy's excess coverage provision, resulting in no coverage under either policy. That is not the case here. Southern County's "Leasing or Rental Concerns-Contingent Coverage" endorsement is not applicable; therefore, it is not mutually repugnant with AIIC's policy, an excess policy.

The trial court's rulings that Southern County's policy provides primary coverage for this accident and that AIIC's policy provides excess coverage to Home

State's policy on the tractor and Southern County's policy on Performance Rental's trailer are affirmed.

### Coverage under Harco's Policy

Harco filed a motion for summary judgment, arguing its policy does not provide coverage for this accident; Plaintiffs filed a motion for summary judgment, seeking a judgment that Harco's policy does provide coverage. The trial court found Harco's $10 million excess policy provided coverage for this accident. Harco makes three arguments regarding the trial court's determination. Finding merit in one of those arguments, we need not address the other two.

Harco contends that its policy's "Leased Autos" exclusion excluded the trailer Performance Rental rented to AFTCO from coverage provided by its policy. Harco's policy provided in pertinent part:

> This insurance does not apply to:
>
> . . . .
>
> **17. Leased Autos**
>
> Any "covered auto" while leased or rented to others. But this exclusion does not apply to:
>
> a.   A "covered auto" you rent to one of your customers while their "covered auto" is left with you for service or repair;
>
> b.   "Bodily injury" or "property damage" arising out of the work you performed or defective products; or
>
> c.   "Bodily injury" or "property damage" caused by an "occurrence" resulting from the ownership of a "covered auto."

Harco points to this exclusion and argues its policy did not provide coverage because the trailer was leased by Performance Rental to AFTCO. Plaintiffs argued

14

to the trial court that this exclusion applies only when "anyone who is an insured under this policy" leases Performance Rental's trailers to someone else, e.g., AFTCO subleases one of the trailers it leased from Performance Rentals to another. Plaintiffs and AIIC also argue that, because no lease agreement existed between Performance Rental and ETSI or Roberts, this exclusion does not apply. Lastly, Plaintiffs argue Roberts, as a permissive user of Performance Rental's trailer, was an insured under Harco's policy; therefore, he cannot be an "other" within the meaning of this exclusion. AIIC also argues that, because the exclusion does not expressly negate coverage for users of leased autos, there is coverage. The trial court found that Harco's policy provided coverage for ETSI and Gonzales, Robert's employer, that is not excluded by this provision.

In *Brown v. Coregis Insurance Co.*, 99-48, 99-49, p. 7 (La.App. 1 Cir. 2/18/00), 752 So.2d 347, 353, the court interpreted a leased autos exclusion which contained language identical to the language at issue here: "[a]ny 'covered auto' while leased or rented to others." The plaintiffs argued the accident resulted from the lessor's negligence in installing a mirror on the vehicle; therefore, the exclusion should not apply. The court rejected the argument, finding "[t]he language of the policy clearly and unambiguously excludes *all* coverage under the policy for any covered auto while it is leased to another . . . [T]he 'leased auto' exclusion . . . excludes coverage, without qualification, once a covered auto is leased to another." *Id.*

The plaintiffs in *Ranger Insurance Co. v. Mancuso*, 94-464, p. 8 (La.App. 5 Cir. 2/15/95), 652 So.2d 28, 32, argued that "others," which was undefined, meant "anyone other than the 'insureds.'" They urged that, because the defendant-driver of the truck was using the truck with the named insured's permission, he was an

15

"insured" under the policy. Plaintiffs make the same argument here. The fifth circuit rejected this argument because the facts established that the defendant-driver was leasing the truck from the named insured, stating: "We read the policy at face value and declare [defendant-driver] was not an 'insured' under the policy, because he was . . . leasing the truck from [the named insured.]" *Id.*

As previously discussed, the supreme court held in *Hertz*, 366 So.2d 1362, that the owner of the trailer "partially owned" the "automobile" which resulted when the tractor and trailer were operated as one unit. Applying that rationale here, the tractor/trailer driven by Roberts was "partially leased" by Performance Rental. Applying the rationales of *Hertz, Brown*, and *Ranger*, the tractor/trailer unit was excluded from the coverage provided by Harco's policy. Based on *Hertz*, we reject the arguments that, because no lease agreement existed between Performance Rental and ETSI or Roberts, the exclusion does not apply. For the reasons stated in *Brown* and *Ranger*, we reject the arguments that the leased autos exclusion applies only when "anyone who is an insured under this policy" subleases one of Performance Rentals' leased trailers to someone else and that Roberts, a permissive user insured under Harco's policy, cannot be an "other" within the meaning of this exclusion.

AIIC cites the case of *Keen Leasing, Inc. v. Fireman's Fund Insurance Co.*, 39 Pa.D.&C.3d 653 (C.P. 5/12/86), for the proposition that the exclusion is ambiguous. In *Keen*, the plaintiff leased a truck. When the truck needed repairs, plaintiff sent an employee to pick it up and bring it in to be repaired. Plaintiff's employee was involved in an accident while driving the truck. The plaintiff made demand on its insurer to defend and pay the claim. The insurer refused on the basis of the leased autos exclusion in its policy. The policy at issue was a garage policy, and the

16

plaintiff's primary business, "if not the very raison d'etre," was the repair and maintenance of vehicles it leased. *Id* at 658. The trial court held that the provision was ambiguous because "the premiums charged were substantially greater than the coverage which [the insurer] now alleges was available." *Id.* at 65. The court noted that the vehicle was subject to a lease agreement but was not in the possession of the lessee at the time of the accident, and AIIC contends that this observation means that a leased autos exclusion applies only when the leased vehicle is in the possession of the lessee. We do not agree. Possession was important in *Keen* because the plaintiff/insured's primary business was repairing and maintaining the vehicles it leased and the vehicle was being driven by its employee to its shop to be repaired when the accident occurred. The situation in *Keen* is not comparable to the situation here.

We find that the leased autos exclusion is clear: the tractor/trailer unit and the trailer individually were excluded from coverage under Harco's policy. The judgment of the trial court in favor of Plaintiffs against Harco is reversed, and judgment is rendered in favor of Harco against Plaintiffs denying them coverage under its policy.

### *Disposition*

The judgment of the trial court is affirmed in part and denied in part. Costs of these consolidated writs are to be paid equally by Plaintiffs, AIIC, Southern County, and Harco.

**WRIT DENIED IN PART AND GRANTED IN PART; JUDGMENT RENDERED.**

17